UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

LARRY PORTER,

        Petitioner,

  v.                                                          Civil Action No.
                                9:03-CV-1299 (LEK/GJD)

MICHAEL P. MCGINNIS, Superintendent of
  Upstate Correctional Facility,

              Respondent.

---

LARRY PORTER, Petitioner *Pro Se*
RISA L. VIGLUCCI, Assistant Attorney General

GUSTAVE J. DIBIANCO, Magistrate Judge

## REPORT-RECOMMENDATION

      This matter has been referred to me for Report and Recommendation by the Honorable Lawrence E. Kahn, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

      Petitioner brings this action for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a judgment of conviction rendered on August 16, 2000 in the Washington County Court. Petitioner was convicted by a jury of two counts of Assault in the Second Degree (N.Y. PENAL LAW §§120.05(3) and (7)) and was sentenced as a second felony offender to a determinate term of seven years in prison on each count to run concurrently to each other and consecutively to the sentence of four years to life petitioner was already serving.

      The Appellate Division, Third Department affirmed petitioner's conviction on April 3, 2003. *People v. Porter*, 304 A.D.2d 845, 759 N.Y.S.2d 773 (3d Dep't 2003).

The New York Court of Appeals denied leave to appeal on June 26, 2003. *People v. Porter*, 100 N.Y.2d 565, 795 N.E.2d 48, 763 N.Y.S.2d 822 (2003).

Petitioner raises six grounds in support of his petition: (1) the grand jury proceeding was defective; (2) the sentence was excessive; (3) the court did not properly instruct the jury; (4) the evidence was insufficient to support his conviction; (5) the court erred in its *Sandoval* ruling; and (6) trial counsel was ineffective.  (Dkt. No. 1, at 5-6).  Respondent has filed his answer, together with a memorandum of law and the pertinent state court records.[1]  On April 14, 2004, petitioner filed a traverse. (Dkt. No. 15).  For the following reasons, this court agrees with respondent and will recommend denial of the petition.

**DISCUSSION**

1. *Facts*

The charges in this case arose from an incident that took place on June 18, 1999 at approximately 8:50 a.m. at Great Meadow Correctional Facility. (Trial Transcript ("T.") at 345, 374, 401).  Petitioner was an inmate housed in the Special Housing Unit called F-Block.  (T. 345). Correctional Officers Robert G. Charron and Sergeant Keith Hendry went to petitioner's cell to escort him to the showers.  (T. 346-347, 357, 374).   A restraining order, issued June 15, 1999, was in effect against petitioner.  The order required the officers to place petitioner in restraints prior to removing him from his cell, which included placing petitioner in handcuffs, attached to

---

[1]      The state court records are listed on page 2 of the answer and are referred to as the "Bates Stamped Records." (Dkt. No. 9, at 2).  The records are paginated in the lower right hand corner beginning with number 1 and ending with 722. *Id.*

a chain secured around his waist with a padlock.  (T. 375, 387, 389-390).  The order was issued due to petitioner's "lengthy history of assaultive, aggressive behavior towards staff."  (T. 388).[2]  Despite the order, the officers often did not use the full restraints because the cell block was a secure area.  On the day in question, the officers opted instead to simply handcuff petitioner behind his back.  (T. 358, 389-390).

Petitioner reached his hands through the "feed-up port," and Charron placed the handcuffs on petitioner's wrists. (T. 347).  Hendry held the port area open by its latch, and opened the gate to petitioner's cell.  (T. 348, 385-86).  Petitioner immediately "thrust back in a kicking motion," striking Charron in the testicles.  (T. 348, 375-76).  Officer Charron was in "excruciating pain."  (T. 348).  After being kicked, he "almost passed out" from the pain.  (T. 351).  Petitioner said, "How do you like that?" and returned to his cell, where the door immediately closed.  (T. 385, 354). No physical force was used on petitioner before or after he kicked Charron.  (T. 354). Neither Charron nor Hendry had ever met petitioner before that day because they were not typically assigned to work on the F-Block.  (T. 353).

At trial, Fisher H. Nesmith III, a Physician's Assistant at Great Meadow facility, testified that he examined Charron.  Nesmith noted that Charron's upper left inner thigh and left testicle were tender, and stated based on his experience as a Physician's Assistant, that a kick to the testicles would cause an adult male

---

[2]    The trial court gave a cautionary instruction to the jury that the history of petitioner's behavior was not relevant to whether he committed the crimes with which he was charged.  (T. 389).

substantial pain.  (T. 400-03).  Charron later went to his own doctor.  (T. 355).  His testicle was swollen and bruised, and he missed three days of work due to the injury. (T. 348-49).  He used ice and took aspirin for the pain.  (T. 355).

Petitioner's defense was that, in addition to the restraining order, a Deprivation Order was also in effect against him and, since the Deprivation Order prevented him from leaving his cell, he saw officers Charron and Hendry as threats to his safety. Defense counsel elicited testimony that a Deprivation Order was issued against petitioner on June 15, 1999, and was renewed on June 16 and June 17.  (T. 358-59). Pursuant to the order, petitioner's out-of-cell activities were restricted, and petitioner was not to be removed from his cell.  (T. 359, 409, 415).  Charron and Hendry testified that they were unaware of the existence of a Deprivation Order in effect on the morning of June 18, 1999, and no evidence was presented that the Deprivation Order had been renewed for the morning of June 18.  (T. 358, 366, 372, 392, 395). Sergeant Hendry testified that even when an inmate is under a Deprivation Order, that inmate would still be entitled to minimum privileges that included medical attention, meals, and showers.  (T. 392-93).

Petitioner called three witnesses, Correctional Officers John A. Woodward, Kenneth Palmer, and Sergeant Charles Lansburg.  (T. 407-21).  Woodward testified that he issued the June 15, 1999 Deprivation Order and that under the order, petitioner was not to be removed from his cell for any reason.  (T. 415).  He also testified that the order was issued after petitioner stated to him, "[w]ait until tomorrow morning.  We'll see what you are about. Just wait until tomorrow when you crack my cell open."  (T. 409-10).  Palmer also testified that if an inmate was under a

Deprivation Order, his cell door was not to be opened.  (T. 415).

Finally, Lansburg testified that he issued a second Deprivation Order against petitioner on June 18, 1999 after what he characterized as a "cowardly" sneak attack on Charron.[3]  (T. 395, 397, 399, 416-18).  He stated that, due to the level of activity in F-Block, it would be possible that an inmate could be released from his cell when he was not supposed to be released.  (T. 419).  Lansburg testified that inmates who are under deprivation orders would still have the right to a shower, but that an inmate could refuse that privilege.  (T. 424-22).  He confirmed that a Deprivation Order had been issued against petitioner for a few days prior to the incident, and that petitioner would have been aware that, under the order, all out-of-cell activity was restricted.  (T. 417).  The June 18 order was to remain in effect from June 18 through June 24 and, according to Sergeant Hendry, there was no way to tell if petitioner knew there was a break between the issuance of the June 15 order and the issuance of the June 18 order.  (T. 395-98.)

## 2. *Standard of Review*

The standard of review in a habeas action depends upon whether the state court considered petitioner's constitutional claims "on the merits." The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides that a federal court lacks the power to grant a writ of habeas corpus under 28 U.S.C. § 2254 unless the state court ruling on the merits of a federal constitutional issue was either " 'contrary to ... clearly established Federal law' or 'involved an unreasonable application ... of clearly

---

[3]Lansburg was referring to the incident that gave rise to the charges in this case.

established Federal law." ' *Noble v. Kelly*, 246 F.3d 93, 98 (2d Cir. 2001)(quoting 28 U.S.C. § 2254(d)(1))(alterations in original), *cert. denied*, 534 U.S. 886 (2001). "Clearly established federal law," as defined by the Supreme Court, refers to the Court's holdings as of the time of the relevant state court decision. *Kennaugh v. Miller*, 289 F.3d 36, 42 (2d Cir. 2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000), *cert. denied,* 537 U.S. 909 (2002)). The statute further provides that the court may grant a writ of habeas corpus when a claim that was considered on the merits by the state court "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

A state court's decision is contrary to federal law if it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams,* 529 U.S. at 413. A state court unreasonably applies clearly established federal law when the correct principle is identified, but the state court unreasonably applies that principle to the facts of the petitioner's case. *Lockyer,* 538 U.S. at 75, *Williams*, 529 U.S. at 413.

Prior to the AEDPA, the court was not required to defer to state court determinations on pure questions of law and mixed questions of law and fact. *Thompson v. Keohane*, 516 U.S. 99, 107-13 (1995). When presented with these questions, the court was empowered to conduct an independent review of the

6

record. *Id.* The factual findings of the state court, however, were presumed to be correct absent circumstances listed in the statute, such as cases in which the factual finding was not fairly supported by the record. 28 U.S.C. § 2254(d) & (d)(8). The AEDPA requires the court to apply a more deferential standard, placing new restrictions on the power of federal courts to grant writs of habeas corpus to state inmates. *Williams,* 529 U.S. at 399.

In order to apply the AEDPA standard, the petitioner's claim must have been "adjudicated on the merits" in the State court proceedings. 28 U.S.C. § 2254(d)(1). Additionally, the AEDPA provides that a state court's fact findings are presumed correct, unless that presumption is rebutted by clear and convincing evidence. Id. § 2254(e)(1). If the State court has failed to adjudicate a claim "on the merits", the pre-AEDPA standard of review applies, and the court reviews both questions of law and mixed questions of law and fact de novo. *Washington v. Shriver*, 255 F.3d 45, 55 (2d Cir. 2001).

### 3. *Grand Jury Proceeding*

Petitioner first claims that the grand jury was defective because (1) there were fewer than 16 jurors sitting and fewer than 12 voted to indict him, and (2) because there was insufficient evidence presented to the grand jury regarding whether Charron saw his physician or was prescribed pain killers.  (Dkt. No. 1, at 5, Ground One).  Petitioner raised these claims on direct appeal in his pro se supplemental brief.  (Dkt. No. 9, Exh. 15, at 558, 562 (Point VIII) & 563 (Point XI)). The last sentence of the Appellate Division's decision reads: "Defendant's remaining arguments, including his claims that the grand jury proceeding was defective . . .

7

have been examined and found to be meritless or unsupported by the record." *Porter*, 304 A.D.2d at 847, 759 N.Y.S.2d at 773. Respondent argues that these claims are not cognizable on federal habeas review.  (Dkt. No. 9, Memorandum at 5-6).

This court agrees with respondent.  Although it is clear that petitioner's claim was rejected on the merits, deficiencies in state grand jury indictments are ***not cognizable*** on federal habeas corpus review. *United States v. Mechanik*, 475 U.S. 66, 70 (1986); *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir.1989); *Dexter v. Artus*, No. 01-cv-237, 2007 WL 963204 at *6 (N.D.N.Y. Mar. 27, 2007).  Petitioner's subsequent conviction by a jury (T. 477-79) cured any arguable defects in the indictment process "because the trial conviction establishes probable cause to indict and also proof of guilt beyond a reasonable doubt."[4]  *Montalvo v. Annetts*, 02 Civ. 1056, 2003 WL 22962504 at *17 (S.D.N.Y. Dec. 17, 2003).  *See Mechanik,* 475 U.S. at 67 ("The petit jury's verdict of guilty beyond a reasonable doubt demonstrates a fortiori that there was probable cause to charge the defendants with the offenses for which they were convicted. Therefore, the convictions must stand despite the [grand jury] rule violation." ); *Davis v. Mantello*, 42 Fed. Appx. 488, 490-91 (2d Cir. 2002) ("Claims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court." ), *cert*. *denied* , 538 U.S. 986 (2003); *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir.1989) ( "If federal grand jury rights are not cognizable on

---

[4]    The court notes that at trial, petitioner asked how many grand jurors were present.  T. 405.  The court, after a lunch recess, responded that it had "a chance to look at the Grand Jury again" and that "[t]here was a legally sufficient number of grand jurors hearing the proceeding.  There were 19."  T. 423.

direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are a fortiori foreclosed in a collateral attack brought in federal court." ); *Klosin v. Conway*, No. 02-cv-0473, 2007 WL 2255119 at *6 (W.D.N.Y. Aug. 7, 2007) (claim of insufficiency of the evidence before the grand jury was cured by petitioner's subsequent conviction after trial and the claim was not a basis for federal habeas relief).

The claim is therefore not cognizable on federal habeas review, and it should be dismissed.  *Mechanik,* 475 U.S. at 67; *Klosin*, 2007 WL 2255119 at *6.

### 4. *Excessive Sentence*

Petitioner claims in Ground Two of his petition that his sentence was excessive.  The trial court imposed a determinate term of seven years incarceration on each count for which petitioner was convicted, and ordered that the sentences run concurrently to each other and consecutive to the life sentence he was already serving.  (Sentencing ("S.") at 490-94).  Petitioner complains that by ordering the sentence to run consecutively to his previous life sentence, the court improperly converted his sentence in this case from a determinate term of seven years into an indeterminate term of seven years to life.  (Dkt. No. 1, p. 5).  Respondent argues that this claim is not cognizable and is without merit.  (Dkt, No. 9, Memorandum at 6-7).

Appellate counsel challenged the sentence on the ground that it was excessive, and that the maximum sentence was imposed as punishment because petitioner opted to have a trial.  (Dkt. No. 9, Exh. 14 at 520-21).  Petitioner, in his pro se supplemental brief, challenged the sentence on the same grounds alleged in the habeas petition.  (Dkt. No. 9, Exh. 15, at 563).  The Appellate Division held that

9

"considering defendant's criminal history and the nature of the subject crimes, we cannot say that the sentence imposed was harsh or excessive," and the court declined to modify the sentence in the interest of justice.  *Porter*, 304 A.D.2d at 847, 759 N.Y.S.2d at 775.  Since the state court decided the claim on the merits, the deferential standard of the AEDPA applies to this claim.

The Appellate Division's rejection of petitioner's challenge to his sentence was not contrary to, or an unreasonable application of established federal law.  It is firmly established that "[n]o federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law."  *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir.1992); *Mayerhofer v. Bennett*, No. 9:02-cv-0074, 2007 WL 1624767 at *7 (N.D.N.Y. June 6, 2007).   Thus, the court must first determine whether the sentence is within the range prescribed by state law.  Petitioner in this case seems to argue that because the judge ordered that the seven year sentences run **concurrently** to the life sentence that petitioner was already serving, this somehow "converted" the assault sentence into a "seven year to life" sentence, which would be "beyond" the range allowed by the statute.

Contrary to petitioner's claim, he was **not** sentenced to an indeterminate prison term of seven years to life.  Petitioner was sentenced, as a second felony offender, to two concurrent determinate terms of seven years on each count of second degree assault.  Second Degree Assault is a class D violent felony.  N.Y. PENAL LAW §§120.05 (3), (7); 70.02(1)(c); 70.25(5)(c). Petitioner was convicted under the specific subsection of the statute that refers to an individual who causes

10

injury to another while serving a sentence of incarceration for another crime.  N.Y.
PENAL LAW § 120.05(7).  The court was **required** to order that petitioner's
sentence under section 120.05(7)[5] run consecutively to the "term of imprisonment to
which the defendant was subject and for which he was confined at the time of the
assault."  *Id.* at §70.25 (5)(a),(c).  Because petitioner was already serving a life
sentence, the seven year concurrent assault sentences were required **by law** to be
made consecutive to petitioner's life sentence.  *Id.*  Petitioner's sentence was within
the statutory range, having a minimum determinate term of three years and a
maximum term of seven years (*see* N.Y. PENAL LAW §§70.06 (6)(c) (defining the
sentences for class D violent felonies applicable to second felony offenders).  Thus,
petitioner's sentence was within the range prescribed by the New York State Law
and does **not** present a constitutional question for review.

Petitioner's challenge to his sentence arguably could be construed as a claim
that the sentence imposed resulted in his suffering cruel and unusual punishment, in
violation of the Eighth Amendment.  The Eighth Amendment, however, forbids only
extreme sentences which are "grossly disproportionate" to the crime of conviction.
*Lockyer,* 538 U.S. at 72-73; *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991). It is
well-established that a sentence of imprisonment that is within the limits of a valid
state statute is not cruel and unusual punishment in the constitutional sense.  *See*
*White*, 969 F.2d at 1383; *Lou v. Mantello*, No. 98-CV-5542, 2001 WL 1152817 at

---

[5]Petitioner was charged under two sections of the assault, second degree
statute.  Count 1 involved section 120.05(3) which involves assault on a peace
officer in the performance of his duty, and Count 2 involved causing injury to
another while incarcerated for a crime under section 120.05(7).

*13 (E.D.N.Y. Sept. 25, 2001).  The Supreme Court has held that, for offenses less than manslaughter, sentences longer than 25 years are not grossly disproportionate. *See Staubitz v. Lord*, 03 CV 0671, 2006 WL 3490335 at *2 (E.D.N.Y. Dec. 1, 2006)(*citing Ewing v. California*, 538 U.S. 11 (2003) (25 years to life for grand theft) and *Harmelin*, 501 U.S. 957 (1991) (life in prison without the possibility of parole for cocaine possession)).  The Appellate Division's decision was not contrary to or an unreasonable application of that precedent.

Since the sentence imposed was plainly within the limits authorized by statute, and was not grossly disproportionate to the crime of conviction, this ground of the petition should be denied.

### 5.  *Jury Instructions*

Petitioner claims in Ground Three of his petition that the trial court failed to properly instruct the jury.  Petitioner claims that the court's reasonable doubt instruction relieved the prosecutor of proving every element of the crimes beyond a reasonable doubt.  (Dkt. No. 1, at 5, Ground Three).  He also claims that the court erred when it denied his request for a justification charge and, because the jury did not have an instruction before it to help them evaluate his defense, he was denied a fair trial.  *Id.*  Respondent argues that these claims are without merit.  (Dkt. 9, Memorandum, at 7-11).

Petitioner's challenge to the reasonable doubt charge is procedurally barred. Although petitioner raised this claim in the Appellate Division, the Appellate Division found that the claim was unpreserved because counsel failed to object to the

12

instruction at trial.  *Porter*, 304 A.D.2d at 846, 759 N.Y.S.2d at 775.  The court then found that, "in any event," if the claim were preserved, "considering the charge as a whole, we would conclude that the charge was appropriate." *Id*.  The Third Department explicitly stated that petitioner's claim was unpreserved.  The fact that it then stated, "in any event," it would have concluded the charge was appropriate does not change that result.  *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) ("where a state court says that a claim is 'not preserved for appellate review' and then ruled 'in any event' on the merits, such a claim is not preserved"); *Harrison v. Walsh*, No. 06-cv-13328, 2007 WL 1576265 at *16-18 (S.D.N.Y. June 1, 2007)(same).

This court may review the procedurally defaulted claim only if petitioner demonstrates cause for the default and resulting prejudice, or that the failure of the federal court to review the claim will result in a "fundamental miscarriage of justice," i.e., that the petitioner is innocent.  *Calderon v. Thompson*, 523 U.S. 538, 559 (1998); *Coleman v. United States*, 501 U.S. 722, 748-750 (1991); *Fama,* 235 F.3d at 809); *Spencer v. Mantello*, No. 9:01 -cv-0112, 2007 WL 446013 at *7 (N.D.N.Y. Feb. 7, 2007).  To establish "cause" sufficient to excuse a procedural default, a petitioner must show that some objective external factor impeded his or her ability to comply with the relevant procedural rule.  *Coleman*, 501 U.S. at 753.

Here, petitioner argues that trial counsel was ineffective in failing to object to the reasonable doubt charge.  (Dkt. No. 1, at 6).  The ineffectiveness of counsel in not raising or preserving a claim in state court will be sufficient to show cause for a

procedural default only when counsel was so ineffective that the representation

violated the petitioner's Sixth Amendment right. *Edwards v. Carpenter*, 529 U.S.

446, 451 (2000); *Aparicio,* 269 F.3d at 91. As discussed more fully below,

Petitioner's claim that trial counsel was ineffective in not objecting to the reasonable

doubt charge fails because the charge was proper. Since petitioner's claim that trial

counsel was ineffective is meritless, it may not serve as "cause" for a procedural

default. *Aparicio*, 269 F.3d at 91-92. Although petitioner contends that he is

innocent because his actions were justified, he has not presented any new evidence

that he is "actually innocent" of the crimes for which he was convicted. *See Schulp*

*v. Delo*, 513 U.S. 298, 327 (1995). Accordingly, this claim is procedurally barred.

   Even if petitioner's challenge to the reasonable doubt charge were not

procedurally barred, the claim would be subject to dismissal. A jury charge in a state

court trial is generally not reviewable in a federal habeas petition. To obtain habeas

relief on a claim that a trial court erroneously instructed the jury, a petitioner must "

'establish[ ] not merely that the instruction is undesirable, erroneous, or even

'universally condemned,' but that it violated some right which was guaranteed to the

defendant by the Fourteenth Amendment.'" *Davis v. Strack,* 270 F.3d 111, 123 (2d

Cir. 2001) (quoting *Cupp v. Naughten*, 414 U.S. 141, 146(1973)). *See DeValle v.*

*Armstrong*, 306 F.3d 1197, 1201 (2d Cir. 2002) (quoting *Henderson v. Kibbe*, 431

U.S. 145, 154 (1977)). The erroneous instruction must have "so infected the entire

trial that the resulting conviction violates due process." *Cupp*, 414 U.S. at 147. The

challenged instructions must be viewed as a whole in the context of the entire jury

charge.  *Middleton v. McNeil*, 541 U.S. 433, 437 (2004)(per curiam); *Justice v. Hoke*,

45 F.3d 33, 34 (2d Cir.1995) (quoting Cupp, 414 U.S. at 146-47).

A trial court must inform the jury of the prosecutor's burden to establish the

defendant's guilt beyond a reasonable doubt.  The United States Constitution does

not require state courts to define the beyond a reasonable doubt standard, but the

instruction must correctly convey the concept of reasonable doubt.  *Victor v.*

*Nebraska*, 511 U.S. 1, 5 (1994); *United States v. Desimone*, 119 F.3d 217, 227 (2d

Cir. 1997), *cert. denied,* 525 U.S. 874 (1998).  In the habeas context, a federal court

must determine whether the instruction was so erroneous or misleading that there is

a "reasonable likelihood" that the instruction was applied in an unconstitutional

manner.  *Victor*, 511 U.S. at 6 (citing *Estelle v. McGuire*, 502 U.S. 62, 72 (1991);

*Beverly v. Walker*, 118 F.3d 900, 902-903 (2d Cir. 1997), *cert. denied* 522 U.S. 883

(1997); *Hall v. Phillips,* No. 04-cv-1514, 2007 WL 2156656 at *8 (E.D.N.Y. July 25,

2007).

 Considered under these standards, the reasonable doubt instruction does

not warrant habeas relief.  Contrary to petitioner's claim, the charge did not relieve

the prosecutor of his burden of proof.  The court told the jury that petitioner "is never

required to prove anything,"  that the People have the burden of proving petitioner's

guilt "as to every fact and every element essential to conviction."  (T. 455, 458).  The

court specifically told the jury that "[t]he burden never shifts."  *Id.*  It defined

reasonable doubt as "a doubt for which some reason can be given" and a doubt that

must "arise because of the nature and quality of the evidence in the case or from the

lack or insufficiency of the evidence in the case."  (T. 458, 459).  Finally, the court

told the jury that if, after considering all of the evidence, it felt "uncertain and not fully

convinced of the Defendant's guilt and you are also satisfied that in entertaining

such a doubt you are acting as a reasonable person should act . . . then that is a

reasonable doubt of which the Defendant is entitled to the benefit."  (T. 460).   The

charge, viewed in context and as a whole, was not erroneous or misleading, and it is

not likely that the jury applied the wrong standard.  *See Victor, 511 U.S. at 6-10;*

*Beverly*, 118 F.3d at 903*.*  The Appellate Division's rejection of this claim is not

contrary to, or an unreasonable application of Supreme Court precedent, and this

claim should be denied.

Petitioner also claims the trial judge erred when he denied petitioner's request

for a justification charge.  Petitioner's burden is greater than that applied to his

challenge to the reasonable doubt charge because this claim is based upon an

"omitted charge, rather than an erroneous one." *Bass v. Scully*, No. 92-cv-0349,

1995 WL 347040 at *4 (E.D.N.Y. May 25, 1995).   Under New York law, a

justification charge may be given if the jury might have decided the defendant's

actions were justified on any reasonable view of the evidence.  *Jackson v. Edwards*,

404 F.3d 612, 622 (2d Cir. 2005); *Bryant v. Fischer*, No. 05-cv-0437, 2005 WL

3418282 at *14 (S.D.N.Y. Dec. 14, 2005); *People v. Padgett*, 60 N.Y.2d 142, 144-45,

465 N.E.2d 795, 797, 468 N.Y.S.2d 854, 856 (1983).  The federal court's "role here

is not to interpret New York's law of justification, but to determine whether the

evidence was sufficient to warrant a justification charge under that law." *Davis,* 270

16

F.3d at 123 n. 4, 124; *accord*, *Jackson*, 404 F.3d at 621-22.  The reviewing court must view the record in the light most favorable to the defendant.  *Jackson*, 404 F.3d at 621-22; *Davis,* 270 F.3d at 123 n. 4; *People v. McManus*, 67 N.Y.2d 541, 549, 496 N.E.2d 202, 207, 505 N.Y.S.2d 43, 48 (1986).  "Where, however, there is no evidence that would support justification, the court may refuse to charge it." *Bryant*, 2005 WL 3418282 at *18 (quoting *People v. Frazier*, 86 A.D.2d 557, 558, 446 N.Y.S.2d at 287, 288 (1982), *lv. denied,* 56 N.Y.2d 651, 436 N.E.2d 201, 450 N.Y.S.2d 1039 (1982).

At trial, defense counsel requested a justification charge under N.Y. Penal Law § 35.05(2), which allows for the use of force which might otherwise constitute criminal conduct, when it is necessary

> as an emergency measure to avoid an imminent public or private injury which is about to occur by reason of a situation occasioned or developed through no fault of the actor, and which is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding such injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue.

N.Y. PENAL LAW § 35.05(2).  The statute sets forth an objective, not a subjective standard, and applies in rare circumstances where an actual danger is imminent and not "speculative, abstract or remote."  *People v. Craig*, 78 N.Y.2d 616, 622-24, 585 N.E.2d 783, 787, 578 N.Y.S.2d 471, 475 (1991).  The statute requires the trial court to determine, as a matter of law, whether the claimed facts and circumstances would, if established, constitute the defense.  N.Y. PENAL LAW § 35.05.

Under New York law, the court must instruct the jury on justification if "any

reasonable view of the evidence would permit the fact finder to decide that the conduct of the accused was justified." *People v. Petty*, 7 N.Y.3d 277, 284, 819 N.Y.S.2d 684, 852 N.E.2d 1155, 1161 (2006) (citation omitted); *People v. McManus*, 67 N.Y.2d 541, 549, 505 N.Y.S. 2d 43, 48, 496 N.E.2d 202, 207 (1986) (citation omitted).  In this case, the trial court reviewed the facts and, after conducting some legal research, concluded that there was no reasonable view of the evidence that would warrant the justification charge under Penal Law 35.05(2).  (T. 431-32).  That decision was not contrary to New York law. *See People v. Palmer*, 192 A.D.2d 803, 805, 596 N.Y.S.2d 522, 523 (3d Dept. 1993)(no reasonable view of the evidence supported justification defense where defendant claimed generally that he had seen corrections officers beat inmates in the past because defendant participated in and aggravated the arising situation); *People v. Harris*, 151 A.D.2d 919, 921, 543 N.Y.S.2d 535, 537 (3d Dept. 1989)("The 'pat frisk' which defendant contends justified his actions did not constitute "an imminent public or private injury" contemplated by Penal Law §35.05(2)."), *lv denied* 74 N.Y.2d 847, 546 N.E.2d 195, 546 N.Y.S.2d 1012 (1989); *People v. Hilliard*, 142 A.D.2d 885, 886, 531 N.Y.S.2d 386, 388 (3d Dept. 1988), *rev'd on other grounds* 73 N.Y.2d 584, 540 N.E.2d 702, 542 N.Y.S.2d 507 (1989)(no reasonable view of the evidence would bring defendant's actions within Penal Law §35.05(2) where defense witness testified that when a corrections officer removed defendant's handcuffs, the officer pressed down and tightened them, inflicting pain and resulting in defendant assaulting the officer).

　　　　The Appellate Division agreed, ruling that "no reasonable view of the

evidence would support charging a justification defense" under N.Y. Penal Law §35.05(2). *Id.* (citing *Palmer*, 192 AD2d at 805 and *Hilliard*, 142 AD2d at 885). The court noted that petitioner's defense was that he believed a deprivation order was in effect that prohibited him from leaving his cell and, when the officers came to take him to the shower, he believed he was about to be attacked. *Id.* The Appellate Division found that there was no evidence that petitioner was under a Deprivation Order on June 18, 1999 and, even if he were, he would "still be permitted to shower." *Id.* Finally, the court found it inconsistent that, if petitioner believed he were about to be attacked, he would voluntarily place his hands into the feeding tray and allow hand restraints. *Id.* Those factual findings are supported by the record. (T. 347-48, 358, 374-75, 391-96, 398-99, 419).

The Appellate Division's decision was not "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also*, *e.g.*, *Rosa v. McCray*, 396 F.3d 210, 220 (2d Cir. 2005), *cert*. *denied* 546 U.S. 889 (2005). Petitioner has not presented clear and convincing evidence that the state court erred in its factual determinations, based on which it correctly held under New York law that the evidence did not warrant a justification charge. Thus, the Appellate Division's rejection of petitioner's challenge to the lack of a justification defense was not contrary to, or in violation of, clearly established federal law. The petition on this ground should be denied.

### 6. *Sufficiency of Evidence*

Petitioner next claims that the trial judge erred when he denied petitioner's

motion to dismiss based upon legally insufficient proof.  (Dkt. No. 1, at 6, Ground Four).  Respondent argues that this claim is without merit.  (Dkt. No. 9, Memorandum at 11-12).

Federal habeas review of a sufficiency claim is highly deferential.  *Fama,* 235 F.3d at 811; *Hernandez v. Conway*, 485 F. Supp. 2d 266, 281 (W.D.N.Y. 2007).  A court may grant habeas relief only if it concludes that "the state court's sufficiency ruling 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Policano v. Herbert*, 453 F.3d 79, 91 (2d Cir. 2006) (quoting 28 U.S.C. § 2254(d)(1)).  In *Policano*, the Second Circuit specifically held that AEDPA deference applies to sufficiency of evidence claims.  *Policano*, 453 F.3d at 91.  In fact, the Second Circuit stated that sufficiency review by the federal court is "highly deferential."  *Id*. at 91-92.

The well-established Supreme Court precedent provides that the court must view the record in the light most favorable to the government, and determine whether ***any*** rational trier of fact would have found the essential elements of the crime, as defined by state law, beyond a reasonable doubt.  *Id*. at 92 (citing *In re Winship,* 397 U.S. 358, 364 (1970); *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)).  *See Hernandez, 485* F. Supp. 2d at 281*; Young v. McGinnis*, 411 F. Supp. 2d 278, 312 (E.D.N.Y. 2006).  A federal court may not grant habeas relief simply because of an independent belief that the state court applied federal law "erroneously" or "incorrectly."  *Id*. (citing *Williams v. Taylor*, 529 U.S. 362, 411 (2000)).  Rather, the habeas court must determine that there is "[s]ome increment of incorrectness beyond

20

error." *Id.* (quoting *Francis v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).  In reviewing a sufficiency claim under the AEDPA, the habeas court may not simply apply *Winship* independently, but must look to State law to determine the facts necessary to constitute the elements of the crime.  *Id.* (citing *Fama*, 235 F.3d at 811).

In this case, a review of the record, in the light most favorable to prosecution, shows that a rational fact finder could have found each essential element of both counts of second degree assault were proven beyond a reasonable doubt.  Under New York law, both counts of second degree assault under Penal Law §120.05 (3) and (7) are class D violent felonies that carry the same penalty.  The state had to prove, under subsection three, that petitioner had the intent to prevent a peace officer from performing a lawful duty and that petitioner caused physical injury to the peace officer. N.Y. PENAL LAW § 120.05(3). The definition of "peace officer" includes correctional officers.  *People v. Holloway*, 261 A.D.2d 658, 659, 691 N.Y.S.2d 583, 584 (3d Dept 1999), *lv. denied* 93 N.Y.2d 972, 716 N.E.2d 1103, 695 N.Y.S.2d 58 (1999).  This subsection does not require proof of intent to injure. *People v. Harmon*, 264 A.D.2d 941, 942, 695 N.Y.S.2d 758, 760 (1999).

To secure a conviction under subsection seven, the state had to prove that petitioner was confined in a correctional facility, that he had intent to cause physical injury, and that he caused that injury to Charron.  N.Y. PENAL LAW § 120.05(7). "Physical injury" means "impairment of physical condition or substantial pain."  *Id.* at §10.00(9).

The Appellate Division held that there was sufficient evidence to establish

every element of both charges.  *Porter*, 304 A.D.2d at 845, 759 N.Y.S.2d at 773.
The testimony established that petitioner was an inmate in a correctional facility, and
that Charron, a peace officer, was performing a lawful duty by preparing to escort
petitioner to the showers when petitioner kicked him in the testicles.  (T. 345, 346-49,
374-75, 377).  The Appellate Division also ruled that there was sufficient proof that
"defendant caused a 'physical injury' to the correction officer."  *Porter*, 304 A.D.2d at
845, 759 N.Y.S.2d 773 (citing N.Y. PENAL LAW §10.00(9)).  The court found that the
evidence, which included a videotape of the attack, the testimony of the injured
officer that he "almost passed out after being struck in the testicles," that the injury
caused him "[e]xcruciating pain" resulting in soreness, bruising, and he missed
several days of work, and the testimony of the physician's assistant who examined
the officer and confirmed the injury and that, in his opinion as a physician's assistant,
the injury would cause an adult man substantial pain, was sufficient evidence to
support petitioner's conviction.  *Id.* at 845-46. *See* T. 348-355, 385-386, 400-403.

Under the facts and circumstances of this case, it was not irrational to have
found that each element of the crimes charged was proven beyond a reasonable
doubt.  *See*, *e.g. People v. Belk*, 241 A.D.2d 552, 661 N.Y.S.2d 239 (2d Dept
1997)(evidence sufficient to establish physical injury where officer testified he
experienced "major" pain when kicked in the chest, suffered bruises as a result, and
required medical treatment including ice and pain relievers), *lv. denied* 90 N.Y.2d
938, 687 N.E.2d 653, 664 N.Y.S.2d 756 (1997); *People v. Crews*, 159 A.D.2d 630,
553 N.Y.S.2d 28 (2d Dept 1990)(evidence sufficient to establish physical injury where

officer missed four to five days of work, sought medical treatment and was in a great deal of pain as a result of defendant's actions).

The Appellate Division did not act contrary to or unreasonably apply Supreme Court precedent in rejecting petitioner's claim, and the petition on that ground should be denied.

### 7.  *Sandoval*[6] Ruling

Petitioner claims in Ground Five of his petition that the state court issued an incorrect *Sandoval* ruling.  Specifically, petitioner complains that the court improperly ruled that, should he testify, the prosecutor could cross-examine him on prior convictions for "criminal possession of marijuana, criminal possession of a weapon a controlled substance as well as drug paraphernalia" because these previous convictions "have nothing to do with ability to tell the truth and should have been excluded."  (Dkt No. 1, at 6).

Petitioner did not testify at trial.  It is well established that where a habeas petitioner opted not to testify at trial, regardless of the fact that the trial court's ruling may have motivated that decision, he is barred from challenging the trial court's ruling regarding impeachment evidence. *Luce v. United States*, 469 U.S. 38, 43 (1984) ("[T]o raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify."); *Ciochenda v. Artus*, No. 06-cv-5057, 2007 WL 1705081 at *6 (S.D.N.Y. June 14, 2007) (petitioner barred from challenging the trial court's ruling on impeachment evidence because he did not testify at trial);

---

[6]     *People v. Sandoval,* 34 N.Y.2d 371, 314 N.E.2d 413, 357 N.Y.S.2d 849 (1974).

*McEachin v. Ross*, 951 F. Supp. 478, 481 (S.D.N.Y.1997) ("[A] habeas petitioner's failure to testify at trial is 'fatal to any claims arising out of a *Sandoval* type ruling' [because] absent such testimony, a court has no 'adequate non-speculative basis upon which to assess the merits of that claim.' ") (quoting *Peterson v. LeFevre*, 753 F. Supp. 518, 521 (S.D.N.Y.1991), *aff'd* 940 F.2d 649 (1991)).  The petition on this ground should be denied.

### 8.  *Ineffective Assistance of Counsel*

Petitioner claims that his trial attorney was ineffective because he failed to object to (1) the trial court's reasonable doubt instruction, (2) the admission of People's Exhibit 2 (Employee Accident/Injury Report); and (3) the sentencing proceeding.  Petitioner also claims counsel was ineffective for failing to cross-examine Nesmith, the physician's assistant.  (Dkt. No. 1, at 6, Ground Six).

Petitioner's claim that counsel was ineffective for failing to object to the reasonable doubt instruction was never presented to the state courts.  See Dkt. No. 9, Exh. 14 at 498-553, Exh. 15 at 554-64.  An application for a writ of habeas corpus may not be granted until a prisoner has exhausted all remedies available in state court unless there is an "absence of available state court corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant."  28 U.S.C. § 2254 (b).  To satisfy the exhaustion requirement, a petitioner must do so both procedurally and substantively.  Procedural exhaustion requires that a petitioner raise all claims in the state court prior to raising them in a habeas petition.  Substantive exhaustion requires that a petitioner "fairly present" any

24

constitutional claims to the state court.  *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997)(*quoting Picard v. Connor*, 404 U.S. 270, 275 (1971)). Petitioner's claim that counsel was ineffective for not objecting to the reasonable doubt charge was not presented to the state court and is unexhausted.

A court may, in its discretion, review and deny on the merits any unexhausted claims if they are "plainly meritless" (*Rhines v. Weber*, 544 U.S. 269, 277 (2005)) or "patently frivolous."  *McFadden v. Senkowski*, 421 F. Supp. 2d 619, 621 (W.D.N.Y. 2006); *Wheeler v. Phillips*, No 05-cv-4399, 2006 WL 2357973 at *5 (E.D.N.Y. Aug. 15, 2006).   Petitioner's claim fails on the merits and, accordingly, the court will not consider it.  28 U.S.C. § 2254 (b)(2).

The state court had the opportunity to decide and did decide petitioner's other ineffectiveness claims.  (Dkt. No. 9, Exh. 15 at 563). The last sentence of the Appellate Division's decision reads: "Defendant's remaining arguments, including his claims that . . . he was denied the effective assistance of trial and appellate counsel, have been examined and found to be meritless or unsupported by the record." *Porter*, 304 A.D.2d at 847, 759 N.Y.S.2d at 773.  Although the Appellate Division cited no analysis of this clam, it appears clear from the decision that the two issues that were raised in the Appellate Division were decided on the merits. *See Sellan v. Kuhlman*, 261 F.3d 303, 311-12 (2d Cir.2001) (an adjudication "on the merits" does not require the state court to explain its decision).  Thus, this court must apply the AEDPA standard to review this claim.  *Jimenez v. Walker*, 458 F.3d 130, 145-146 (2d Cir. 2006) (where state court fails to provide reasoning for its decision, but disposes

of the federal claim and reduces that disposition to judgment, AEDPA deferential standard applies), *cert. denied,* 127 S. Ct. 976 (2007).

The well-established Supreme Court precedent provides that a claim of ineffective assistance of counsel is sustainable only if counsel's representation fell below an objective standard of reasonableness, and there is a reasonable probability that, absent counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Claudio v. Scully,* 982 F.2d 798, 803 (2d Cir.1992), *cert. denied*, 508 U.S. 912 (1993). In applying this test, a reviewing court must be "highly deferential" and presume that counsel's conduct falls within the range of reasonable performance. *Strickland*, 466 U.S. at 689.  Any counsel errors must be considered in the aggregate, rather than in isolation. *Lindstadt v. Keane*, 239 F.3d 191, 199 (2d Cir.2001). The failure to make meritless arguments or objections cannot constitute ineffective assistance. *United States v. Arena*, 180 F.3d 380, 396 (2d Cir.1999), *cert. denied,* 531 U.S. 811 (2000).

A review of the record indicates that trial counsel properly represented petitioner in all respects.  Counsel filed appropriate pretrial motions.  (Dkt. No. 9, Exh. 2, at 3-8).  Counsel objected to the prosecutor's use of the videotape of the event.  (T. 343, 350).  Counsel cross-examined witnesses.  (T. 357-59, 386-96).  He vigorously presented a defense by calling witnesses in an effort to establish that a deprivation order was in effect on June 18, 1999 and, if it were not in effect, that petitioner had no way of knowing that fact.  (T. 387, 388, 394-96).  Counsel repeatedly advocated for a justification defense, and submitted a brief in support of

his position.  (T. 77-82, 318, 428-32).

Nonetheless, Petitioner claims first that counsel was ineffective for not objecting to the trial court's reasonable doubt charge.  As noted above, the Appellate Division found that the reasonable doubt charge was appropriate, and that finding is not contrary to or an unreasonable application of federal law. *Porter*, 304 A.D.2d at 846, 759 N.Y.S.2d at 775; *Cupp*, 414 U.S. at 146-157; *Walker*, 118 F.3d at 902-903. Counsel cannot be ineffective for failing to make a meritless objection.  *Arena*, 180 F.3d at 396.

Petitioner next claims, as he did on direct appeal (Dkt. No. 9, Ex. 15 at 560-61, 563), that counsel was ineffective for not objecting to People's Exhibit Number 2, an Employee Accident/Injury Report prepared by Fisher Nesmith after treating Charron, and for not cross-examining Nesmith.  (Dkt. No. 1, at 6, Traverse at 5, ¶ 24, 27).  He argues that the report was inconsistent with Nesmith's testimony that he provided treatment because the report allegedly referred Charron to his private physician. (Traverse at ¶ 24).

Petitioner's complaints regarding counsel's trial strategy, including the failure to impeach or cross-examine prosecution witnesses, do not constitute ineffective assistance of counsel.  *Reese v. Greiner*, No. 97-cv-5622, 2003 WL 21459577 at *5 (S.D.N.Y. June 23, 2003).   The Second Circuit has held that the decision "whether to engage in cross-examination, and if so, to what extent and in what manner" are strategic decisions that courts will almost never second guess.  *United States v. Nersesian*, 824 F.2d 1294, 321 (2d. Cir. 1987), *cert. denied* 484 U.S. 958 (1987);

*United States ex rel. Walker v. Henderson*, 492 F.2d 1311, 1314 (2d Cir.1974), *cert.*
*denied* 417 U.S. 972 (1974).

Counsel's decisions not to cross-examine Nesmith or object to his report were
likely the result of strategy.  Charron testified that he suffered "excruciating" pain and
bruising as a result of petitioner's kick, that he saw Nesmith and ***then his own***
***doctor***, that he used ice and aspirin as treatment, and that he missed three days of
work. T. 348-51. The jury watched the assault on videotape.  (T. 351-52, 385-86).
Counsel likely recognized that this evidence, if believed by the jury, would be
sufficient to establish Charron suffered physical injury.  *See e.g. People v. Rojas*, 61
N.Y.2d 726, 727, 460 N.E.2d 1100, 1101, 472 N.Y.S.2d 615, 616 (1984) (the
subjective reaction of a victim to an injury is a factor for the jury to consider); *Belk*,
241 A.D.2d at 552-53, 661 N.Y.S.2d at 240; *Crews*, 159 A.D.2d at 630, 553 N.Y.S.2d
at 29.

Counsel may have believed that cross-examination regarding Nesmith's
observations of Charron's injuries would have emphasized those injuries to
petitioner's detriment.  Instead, counsel opted to follow the defense advanced by
petitioner - that his actions were ***justified*** due to the deprivation order. Petitioner's
disagreement with trial counsel's strategy, even though it proved unsuccessful, is not
a basis for habeas relief. *See Henry v. Poole*, 409 F.3d 48, 58 (2d Cir.2005) (in
applying the *Strickland* standard, "courts should not confuse true ineffectiveness with
losing trial tactics or unsuccessful attempts to advance the best possible defense" ),
*cert. denied,* 547 U.S. 1040 (2006); *Lopez v. Greiner*, 323 F. Supp. 2d 456, 480

28

(S.D.N.Y. 2004) (trial counsel not ineffective where "the record as a whole" demonstrates that counsel "pursued a coherent, if ultimately unsuccessful, defense strategy" ), *aff'd,* 159 Fed. Appx. 320 (2d Cir. 2005).

Finally, petitioner claims that trial counsel was ineffective for not objecting to the sentencing proceeding.  As noted above, petitioner was properly sentenced, as a second felony offender, to seven years on each count of second degree assault, ordered to run concurrently with each other and consecutively to the life sentence petitioner was already serving.  (S. 489-91).  To the extent that petitioner's claim is that counsel did not object when the sentence was improperly converted to a term of seven years to life, that claim is without merit and unsupported by the record. *Id.* Since petitioner's sentence was legal and proper under New York law, trial counsel cannot be found ineffective for failing to object to it.  *United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995)(ineffective assistance of counsel cannot be based upon "the failure to make a meritless argument."), *cert*. *denied,* 516 U.S. 927 (1995).

Petitioner has not demonstrated any deficient performance by trial counsel, nor has he shown that he suffered "prejudice" as a result of counsel's performance. *See Strickland v. Washington*, 466 U.S. at 694; *Flores v. Keane*, 211 F.Supp.2d 426, 441 (S.D.N.Y.2001).  The claim of ineffective representation must be denied on this basis.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED, that the petition for a writ of habeas corpus (Dkt. No. 1) be DENIED and DISMISSED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file

written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e); *Roldan v. Racette*, 984 F.2d 85 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir.1989)).

Date: August 31, 2007

_____

Hon. Gustave J. DiBianco
U.S. Magistrate Judge